**Thomas KIRKPATRICK, Plaintiff,**

v.

**Lisa KIRKPATRICK, et
al., Defendants.**

**No. 5:03CV1130.**

United States District Court,
N.D. Ohio,
Eastern Division.

July 18, 2003.

Todd B. Kotler, Akron, OH, for Plaintiff.

James J. Gildersleeve, Salamanca, NY, for Defendants.

### MEMORANDUM OPINION AND ORDER

DOWD, District Judge.

After Plaintiff moved for a temporary restraining order in the above-captioned matter, the Court raised, *sua sponte,* the issue of jurisdiction based on the Supreme Court holdings in *Iowa Mutual Insurance Co. v. LaPlante,* 480 U.S. 9, 14, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987), and *National Farmers Union Insurance Cos. v. Crow Tribe,* 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985). (Order dated June 13, 2003, at 1–2 (Doc. No. 5).) The Court set deadlines for the parties to brief the issue. Plaintiff filed his brief in support of jurisdiction on June 27, 2003 (Doc. No. 6). Defendants have failed to respond by the set deadline and, based on a review of the current docket report, have not otherwise responded to the complaint or pending motion for a temporary restraining order, despite proofs of service filed by Plaintiff. Notwithstanding, it still appears to the Court that it lacks jurisdiction to hear this matter.

Plaintiff Thomas Kirkpatrick ("Thomas") alleges violations of the Fifth Amendment, the Fourteenth Amendment, and the Soldiers and Sailors Civil Relief Act, 50 U.S.C. § 501 *et seq.* (1990 & Supp.2003), against Defendant Seneca Nation of Indians, the Seneca Nation of Indians Peacemaker's Court ("Peacemaker's Court") and two of its Cattaraugus Reservation judges, the Seneca Nation of Indians Court of Appeals ("Seneca Court of Appeals") and five of its judges, and the Seneca Nation Supreme Appellate Court ("Seneca Su-

preme Court"). All of these courts are located in Irving, New York. He has also named as a defendant his ex-wife, Defendant Lisa Kirkpatrick ("Lisa"). Citing to constitutional and federal statutory deficiencies in the judicial process of the Seneca Nation courts, Thomas sues these defendants to maintain custody of Thomas and Lisa's daughter, S.K.[1] He asserts four counts, namely: (1) violation of his substantive due process rights under the Fifth and Fourteenth Amendments; (2) violation of his Procedural Due Process rights under the Fifth and Fourteenth Amendments, and violation of the Soldiers and Sailors Civil Relief Act; (3) deprivation of civil rights under 42 U.S.C. § 1983; and (4) attorney fees under 42 U.S.C. § 1988.

### I.

The underlying dispute of this case is a fight for child custody. The conflict has widened, however, because of a very convoluted procedural posture in the tribal courts. Further complicating this dispute is the fact that Thomas, a member of the armed forces, was called to active duty during the recent conflict in the Middle East during the pendency of the proceedings in the tribal court.

Lisa is an "enrolled member" of the Seneca Nation of Indians, but has never resided on a Seneca reservation. She currently resides in Hamburg, New York. Thomas is a non-native and non-member of the Seneca Nation of Indians, and has never resided on a Seneca Nation Reservation. He lives in Fairlawn, Ohio. Thomas and Lisa wed on March 14, 1997, after having their first and only child together, S.K., on February 7, 1997. S.K. was enrolled as a member of the Seneca Nation of Indians.

---

1. Pursuant to the Local Rules, N.D. Ohio 8.1(b), the Court identifies Kirkpatrick's mi-

nor daughter only by her initials.

Thomas and Lisa divorced on July 10, 2000, through the Peacemaker's Court.[2] The court granted Thomas "sole and physical custody" of S.K. In October 2002, Lisa moved that court for joint custody, visitation, and to make S.K. a ward of the court. Resolving her motion, the Peacemaker's Court ordered that Thomas maintain sole custody of S.K., but (somewhat confusingly) made S.K. a ward of the court in the same order. From this point forward, everything seemed to go downhill for Thomas.

On October 30, 2002, Thomas timely filed a notice of appeal to the Seneca Court of Appeals for review of the lower court's order making S.K. a ward of that court. For reasons that are not clear, Thomas's appeal was not "perfected" for four months. In January 2003, Thomas received a notice from the U.S. Navy that his reserve unit was being deployed as part of the buildup of forces in the Middle East. On March 7, 2003, the Seneca Court of Appeals telephoned Thomas's wife, Susan Kirkpatrick ("Susan"), and informed her that a hearing was scheduled in his appeal for March 12, 2003. Susan responded that Thomas was deployed in Italy and would be unable to return for the hearing. According to the complaint, the caller informed Susan to attend the hearing, to testify on Thomas's behalf, and to bring S.K. to the proceedings.[3] Susan was able to retain counsel admitted to practice in the relevant court the night before the hearing.

At the commencement of the hearing, two of the Seneca Court of Appeals judges recused because of a familial relationship to Lisa. Despite Thomas and Susan's counsel's request to continue the hearing and over counsel's objections, the judges conducted an off-the-record discussion of the motion and evidence for one and a half hours. The court then scheduled the motion for another hearing on March 31, 2003, over Thomas and Susan's counsel's objection that there was no guarantee Thomas could return in time.[4]

On March 18, 2003, Thomas (through counsel) sought permission to appeal the case directly to the Seneca Supreme Court. Thomas's counsel also asked to stay the proceedings in the Seneca Court of Appeals pursuant to the Soldiers & Sailors Civil Relief Act. While these procedural motions were pending, Lisa petitioned the Peacemaker's Court for temporary custody and was granted relief on March 31, 2003. Thomas complains that he received late notice of these custody proceedings, and did not receive an opportunity to answer or otherwise respond to the motion. Citing S.K.'s status as a ward of the court, the Peacemaker's Court summarily ordered a change of custody without, allegedly, any findings of fact to justify such a change and despite the pendency of appeal to the Seneca Supreme Court. Thomas filed an additional notice of appeal on April 4, 2003, with respect to these new developments, citing to "numerous" procedural defects in the change-of-custody order and the failure of the system to stay

---

**2.** Thomas re-married and apparently has other children in his household.

**3.** This is not clarified in the complaint, but it appears that the Seneca Court of Appeals construed a power of attorney executed by Thomas to grant Susan the authority to make medical decisions for S.K. as authority granted to Susan to act on Thomas's behalf in the judicial proceedings. (Compl.Ex. J.)

**4.** Thomas does not describe in his complaint what happened at the re-scheduled hearing, but a May 22, 2003, opinion of the Seneca Court of Appeals noted that the March 31, 2003, hearing proceeded as scheduled, that no representative for Thomas was present, and that notices of the hearing were sent to Thomas's addresses in Fairlawn and to a Naval office in Italy. (Compl.Ex. J.)

the proceedings under the Soldiers and Sailors Civil Relief Act.

By May 12, 2003, Thomas had apparently returned from overseas and appeared with his counsel on this date before the Seneca Court of Appeals. The court informed Thomas that they were disqualifying his counsel because of a conflict of interest. Apparently, the conflict of interest was brought to the court's attention by Lisa through a motion, which Thomas complains was not properly served. The court inquired as to the time he needed to retain new counsel, and Thomas requested thirty days. Without describing what happened to his request for a thirty day extension, Thomas indicates that the Seneca Court of Appeals, ten days later on May 22, 2003, dismissed his appeal of the order making S.K. a ward of the court. This dismissal order cited Thomas's absence at the March 31, 2003, hearing as the basis for dismissal of his appeal. (Compl.Ex. J.)

On June 4, 2003, Thomas received a certified letter ordering him to appear before the Seneca Court of Appeals on June 16, 2003, presumably with respect to his second notice of appeal. (Compl.Ex. K.) Thomas filed the instant case on June 6, 2003. On June 9, 2003, at 4:00 P.M., Thomas filed the instant motion for a temporary restraining order, complaining that the "procedural abuse in this case [i.e., the Seneca judicial proceedings] demonstrates the futility in trying to obtain justice within the tribal court system." (Mot. for T.R.O. at 1–2.) As indicated, on June 13, 2003, the Court ordered the parties to brief the issue of jurisdiction.

## II.

■ As previously discussed in this Court's order of June 13, 2003, the Supreme Court has acknowledged that "Tribal Courts play a vital role in tribal self-government, and the Federal Government has consistently encouraged their develop-

ment." *LaPlante*, 480 U.S. at 14, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987). Federal courts are barred from exercising jurisdiction over matters pending in tribal courts. *Bowen v. Doyle*, 230 F.3d 525, 529 (2d Cir.2000) (citing *LaPlante*, 480 U.S. at 15–19, 107 S.Ct. 971; *Nat'l Farmers Union Ins.*, 471 U.S. at 856–57, 105 S.Ct. 2447). "[P]roper respect for tribal legal institutions requires that they be given a 'full opportunity' to consider the issues before them and 'to rectify any errors.' " *LaPlante*, 480 U.S. at 16, 107 S.Ct. 971 (quoting *National Farmers Union Ins.*, 471 U.S. at 857, 105 S.Ct. 2447).

Advocating a finding of jurisdiction, Thomas insists that the Court retain this case and allow it to proceed. To support this argument and in an attempt to distinguish the Supreme Court cases of *LaPlante* and *National Farmers Union*, Thomas indicates that he and S.K. have never lived on the Seneca reservation and that S.K. has lived with him over the past three years. He further argues that, unlike the defendant insurance companies in *LaPlante* and *National Farmers Union*, Thomas sought relief in the tribal courts.

■ These arguments miss the mark. Thomas's assertion that he and S.K. have never lived on Seneca land is, if anything, a basis to challenge the jurisdiction of the Seneca court—an argument that should have been brought, if at all, in that forum. Instead, however, Thomas appears to have submitted to the jurisdiction of the tribal courts, as shown by his admission that he sought relief there. Thomas and S.K.'s residence in Ohio, the duration of time that they lived together, and the fact that they never lived on Seneca grounds are not reasons for this Court to retain jurisdiction. Nor is the fact that he, unlike the defendant insurance companies in *LaPlante* and *National Farmers Union Insurance*, sought relief in the tribal courts

forms a basis for jurisdiction. In fact, the opposite is true. His apparent submission to the jurisdiction of the tribal courts suggests that this Court should decline to exercise jurisdiction over this matter while Thomas and his ex-wife fight for child custody in that court system.

Moreover, Thomas's cited reasons do not serve to distinguish *LaPlante* or *National Farmers Union*. The Court cited these cases for the proposition that the federal courts should refrain from interfering with the unfinished proceedings in the tribal courts. Thomas cannot address that concern by citing to irrelevant facts.

Thomas also argues that proceeding in the tribal courts would be futile. To substantiate this argument, he indicates that the Seneca Peacemaker's Court failed to perfect Thomas's appeal within the court's rules, the Seneca Court of Appeals took several so-called questionable actions, the Peacemaker's Court ordered a change in S.K.'s custody *ex parte,* and that the Seneca Clerk of Courts refused to deliver certain transcripts to Thomas. By his own admission, however, Thomas concedes that his appeal was eventually perfected, albeit four months later. With respect to the so-called questionable acts and the allegedly *ex parte* ruling, the Court notes that for this Court to grant relief in such situations would be the equivalent of issuing a writ of mandamus to the tribal courts. Thomas cites to no authority empowering this Court, which is a court of limited jurisdiction, to issue such a writ or the equivalent of such a writ. Presumably, the tribal courts have such an intervention system already in place, negating the need for federal courts to do so. Lastly, the failure of the Seneca Clerk of Courts to deliver transcripts sounds like something that Thomas should take up with a supervisor or some other official within the Seneca Clerk of Courts or even to the tribal courts, themselves. He makes no indica-

tion of taking such steps. The bottom line is, while these complaints may be sufficient to establish that Thomas is legitimately dissatisfied with the tribal courts' handling of his case, they do not establish that seeking relief in the tribal courts would be futile. Even more compelling, Thomas states in his jurisdictional brief that the tribal courts "have sought to make litigating within their system increasingly difficult for Tom Kirkpatrick." (Pl.'s Br. at 4.) No matter how liberally read, however, the meaning of "increasing difficulty" does not equate with the concept of futility.

Under *LaPlante* and *National Farmers Union,* the Court lacks jurisdiction over this case. The underlying dispute of this case remains pending in the Seneca tribal court system. The merits of Thomas's custody dispute with his wife and the legal propriety of the lower tribal courts' handling of this dispute should be addressed by the hierarchy of that system before the federal courts become involved, if at all. In any event, at this time, Thomas has not established a basis for jurisdiction in order for this Court to retain this case. Accordingly, the Court dismisses this action for lack of jurisdiction.

### III.

For the reasons stated in this memorandum opinion and order, the Court DISMISSES this case for lack of jurisdiction. The Court will publish a separate judgment entry consistent with the language of this memorandum opinion.

The Court directs Plaintiff to send a copy of this memorandum opinion and order, together with a copy of the accompanying judgment entry, to Defendants via USPS regular mail.

IT IS SO ORDERED.